**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CANAL INSURANCE COMPANY, | |
| *Plaintiff*, | No. 26-mc-46-EGS-MAU |
| v. | |
| MEAGHAN BACA, *et al.*, | |
| *Defendants*. | |

## REPORT AND RECOMMENDATION

This case arises from a fatal collision that occurred in Bernalillo County, New Mexico, about which litigation is pending in the U.S. District Court for the District of New Mexico. ECF No. 1-1 at 17;[1] *see Canal Ins. Co. v. Tao Express, LLC, et. al.* (24-cv-01130-SCY-KK). Meaghan Baca is one of the defendants in that case. Before this Court is Baca's Motion to Compel Compliance with Subpoena, seeking to have non-party U.S. Immigration and Customs Enforcement ("ICE") produce certain information related to Baca's opposition to declaratory judgment in the underlying action. ECF No. 1. The District Court referred this case to this Court for full case management. *See* Min. Order (Apr. 23, 2026). For the following reasons, the Court recommends **GRANTING** Baca's Motion.

## BACKGROUND

### I.    Factual Summary

The underlying action concerns the following allegations. On November 17, 2023, box truck driver Marco Vasquez-Pena rear-ended a pickup truck. ECF No. 1-1 at 20. The driver of the

---

[1]    Citations are to the page numbers in the ECF headers.

pickup truck, Steve Cox, suffered catastrophic injuries and died.  *Id.* at 20.  Tao Express and

Amazon controlled the box truck Vasquez-Pena drove at the time of the accident.  *Id.* at 80.  Dairon

Enrrique Aleman Quintana is the sole owner and manager of Tao Express, a company insured by

Canal Insurance, Inc. ("Canal").  *Id.* at 19.

Baca is the personal representative of Cox's estate.  *Id.* at 20.  Baca and other individuals

connected to Cox sued Tao Express, Vasquez-Pena, Amazon, and several other parties in New

Mexico state court for wrongful death, personal injuries, loss of consortium, and other damages.

*Id.* at 11, 54, 62.  Canal moved for declaratory judgment in the U.S. District Court for the District

of New Mexico.  *Id.* at 17.  Canal contends that it does not owe a duty to defend or indemnify Tao

Express or Vasquez-Pena because Tao Express failed to cooperate with the investigation and

because Tao Express and Vasquez-Pena failed to report the accident, claim, and loss, among other

reasons.  *Id.* at 33.  Canal's Motion for Partial Summary Judgment is pending before the District

Court in New Mexico.  Baca has filed a Motion for Extension of Time to respond under Rule 56(d),

pending her ability to obtain evidence it seeks in this case.  ECF No. 1 at 5.

Baca's attorney investigated Quintana's whereabouts with the goal of discussing his

cooperation in the underlying action.  ECF No. 1-1 at 11–12.  During this investigation, Quintana's

attorneys advised that they believed Quintana "had been deported, possibly to his country of origin,

Cuba."  *Id.* at 11.  Baca's attorney then attempted to verify this information through the ICE

Information Center Hotline Call Center ("Hotline").  *Id.*  Baca's attorney reports that an individual

on the Hotline orally confirmed that Quintana had been deported.  *Id.*

Baca claims that the information she seeks about Quintana's detention and deportation

explains why Quintana had not informed Canal of the accident or cooperated with this

investigation, providing a defense to overcome Canal's motion for declaratory judgment.  ECF No.

1 at ¶¶ 15, 16 (citing authority to argue that insurers are not justified in denying coverage to insured parties that are incapacitated).  Baca thus seeks this information in a format that is admissible as evidence to defend against Canal.  ECF No. 1 at ¶ 13.

II.     **Procedural History**

On November 25, 2025, Baca served a Rule 45 subpoena on ICE to Produce Documents, Information, or Objects to Permit Inspection of Premises in a Civil Action, specifically seeking any and all documentation identifying Quintana's date of deportation and the country to which Quintana was deported.  ECF No. 1-1 at 2, 5.  This subpoena commanded ICE to produce these documents on December 12, 2025.  *Id.* at 2.  On December 9, 2025, ICE responded to Baca explaining that, under its *Touhy* regulations, 6 C.F.R. §§ 5.41 to 5.49, ICE could not provide the requested information without a more detailed request that "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought."  ECF No. 1-1 at 7–8 (quoting 6 C.F.R. § 5.45 (2026)).

On January 28, 2026, Baca provided ICE with a more detailed explanation of the nature and relevance of the requested documentation.  ECF No. 1-1 at 10–12.  A few weeks later, on February 9, 2026, Baca sent a letter to ICE following up on her January 28 request and modifying her initial request to also include any documentation related to Quintana's date of detention.  ECF No. 1-1 at 203.  ICE rejected Baca's request on February 12, 2026, asserting that 6 C.F.R. § 5.48(a) (2026) and the Privacy Act, 5 U.S.C. § 522a, preclude DHS from disclosing information concerning an individual without that individual's consent or a court order.  ECF No. 1-1 at 210–11.  Accordingly, Baca moved in this Court to compel ICE to comply with her subpoena and provide the requested documentation regarding Quintana's date of detention, date of deportation, and location of deportation.  ECF No. 1 at ¶¶ 14, 19.

## ANALYSIS

### I.   The Parties' Arguments

Baca advances four arguments to support her Motion: (1) the requested discovery is relevant to the underlying action; (2) the requested discovery does not pose an undue burden for ICE; (3) ICE's *Touhy* regulations, 6 C.F.R. § 5.48(a), do not prohibit disclosure of the requested documents; and (4) the requested discovery, if ordered by this Court, falls within an exception to the Privacy Act, 5 U.S.C. § 552a(b)(12), because the information is compelled pursuant to a court order. *See* ECF No. 1 at 8–12. When arguing that the requested discovery is relevant and not unduly burdensome, Baca repeatedly emphasizes that the response to the subpoena will likely amount to two to three pages in total, that ICE has already provided this information orally through its Hotline, and that this information is critical to overcoming Canal's motion for declaratory judgment in the underlying action. ECF Nos. 1 at 8–9; 5 at ¶¶ 3–8. For the *Touhy* regulations, Baca argues that the factors contained in the regulations show that, on balance, they do not prohibit disclosure. ECF No. 1 at 9–11. Finally, when addressing the Privacy Act, Baca explains that she cannot secure Quintana's written consent, asks for the Court's order as an exception to the Privacy Act, and expresses that she "would not oppose a protective order, in camera inspection, or notice period should the Court determine that to be appropriate." *Id.* at 11–12; *see* ECF No. 5 at ¶ 12.

According to ICE, the requested discovery is prohibited by its *Touhy* regulations and is in violation of the Privacy Act, although ICE does not make much of an argument beyond generally citing those authorities. *See* ECF No. 4 at 6–7. In conclusory fashion, ICE asserts that the discovery would be unduly burdensome, ICE should not be involved in litigation between private parties, it should concentrate on its core duties and responsibilities, and it cannot disclose the requested information without Quintana's written consent. *Id.* Notably, as Baca points out, ICE

4

quotes a portion of the Privacy Act, but excludes the relevant portion that addresses the Act's numerous exceptions. ECF Nos. 4 at 7; 5 at ¶ 12. Although ICE does not directly respond to Baca's request for this Court to order disclosure as an exception to the Privacy Act, ICE does state that the Privacy Act precludes disclosure "without that individual's prior notarized consent *or an appropriate court order*." ECF No. 4 at 7 (emphasis added).

## II.    Standard of Review

Rule 45 governs third party subpoenas. *See* Fed. R. Civ. P. 45. A Rule 45 subpoena may command a third party to produce documents or electronically stored information. Fed. R. Civ. P. 45(c)(2)(A). If the third party objects to the subpoena, the party seeking discovery "may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). When considering a Rule 45 motion to compel, a court "must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined by Rule 26(b)(1)." *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). The party seeking discovery bears the burden of showing that the request is sufficiently relevant. *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007). If the requested discovery is relevant, the court then considers objections to the subpoena under Rule 45, including whether it poses an undue burden on the third party. *BuzzFeed*, 318 F. Supp. at 356. The burden falls on the party resisting discovery to show that compliance would be unduly burdensome. *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010).

Federal Rule of Civil Procedure 26(b) governs the scope and limits of discovery. Unless limited by court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering,"

among other factors,[2] "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Discovery is relevant "if there is any possibility that the information sought may be relevant to the claim or defense of any party." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (quoting *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09-0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009) (citation omitted)). In the discovery context, relevance is "liberally construed." *Id.* It is not, however, "so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. 2011) (quoting *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997)).

Courts must quash or modify a subpoena that subjects a third party to an undue burden, even if the subpoena is relevant. Fed. R. Civ. P. 45(d)(3). This standard requires district courts "to be generally sensitive to the costs imposed upon third parties." *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007). The relevance factors set forth in Rule 26(b)(1) and (2) also assist in determining whether discovery creates an undue burden. *See id.*; *see also In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans Affairs*, 257 F.R.D. 12, 18 (D.D.C 2009). The heavy burden of demonstrating that the requested discovery would be unduly burdensome falls on the party resisting discovery. *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 173, 176 (D.D.C. 1998).

---

[2] Other listed factors are "the importance of issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Federal Housekeeping Statute, 5 U.S.C. § 301, authorizes government agencies to create procedures for responding to subpoenas. *In re Dep't of Veteran's Affairs*, 257 F.R.D. at 15. Known as *Touhy* regulations, these provisions do not "alter the procedures set forth in the Federal Rules of Civil Procedure or . . . preclude the production of documents 'that are relevant to a judicial proceeding.'" *S.E.C. v. Selden*, 484 F. Supp. 2d 105, 107 (D.D.C. 2007) (quoting *U.S. ex rel. Touhy*, 340 U.S. 462, 471 (1951) (Frankfurter, J., concurring)). *Touhy* regulations do not authorize a federal agency to withhold documents from a federal court. *Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996). Nor do they "confer a separate privilege upon the government" or "create a special basis to withhold information pursuant to a federal subpoena." *In re Dep't of Veterans Affairs*, 257 F.R.D. at 15.

### III.     The Requested Information is Relevant and Not Unduly Burdensome.

At the outset, it is important to note that, although ICE argues that the subpoena should be quashed, it did not move to quash.

### A.     Baca demonstrates that the information is relevant.

Baca carries her burden of showing that the requested discovery is relevant to the underlying action, having shown that the information in an admissible format would help her overcome Canal's declaratory judgment action. ECF Nos. 1 at 8–9, 5 at ¶¶ 4–6. Because Baca seeks information directly related to her defense against Canal, namely, that Tao Express could not cooperate or notify Canal because its sole owner had been deported, the requested information falls within the scope of Rule 26's relevance standard. *See In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. at 124–25 (determining that requested discovery was relevant and discoverable because

the defendants demonstrated that the requested materials were potentially relevant to the plaintiff's claims). Moreover, ICE does not make any meaningful argument that the information is irrelevant.

### B.    ICE fails to show that the information is unduly burdensome.

As the party resisting discovery, ICE bears the heavy burden of demonstrating how the requested information would pose an undue burden. *See In re Micron Tech*, 264 F.R.D. at 9. Here, ICE has failed to carry that burden. ICE fails to introduce an affidavit or otherwise show with any specificity how or why producing the requested documents would be unduly burdensome. ICE's only argument as to undue burden is that "Defendant is seeking information concerning a third-party individual's immigration status and present location." ECF No. 4 at 6–7. ICE's lack of any affirmative description of how gathering and producing the three requested records would pose an undue burden stands in stark contrast with *Linder*, where the court found a discovery request was unduly burdensome based upon the Central Intelligence Agency's affidavit explaining that discovery would involve 27 man years of effort to hand search more than one million records. 180 F.R.D. at 175–76. Even then, the *Linder* court modified the requested discovery to documents generated within a two-year window rather than quash the subpoena outright. *Id.* at 176.

Baca, on the other hand, states that "[t]he records cannot be obtained from some other source that is more convenient, less burdensome, or less expensive: these are records that would solely be in ICE's possession." ECF No. 5 at ¶ 7. Baca also explains that the issues are directly relevant to the issues in the underlying action and that it should not be burdensome for ICE to produce an estimated two to three records. *Id.*; ECF No. 1 at 8–9. Additionally, Baca points out that "producing the records along with a records custodian affidavit would avoid the need for an ICE employee to be deposed or to testify at trial in the Underlying Action." ECF No. 5 at ¶ 8.

### IV.    The *Touhy* Regulations Do Not Prevent ICE's Compliance.

ICE's arguments under the *Touhy* regulations are also largely conclusory and lack any evidentiary support.  The only argument that ICE makes with any specificity is that the *Touhy* regulations bar compliance where such compliance "would violate a statute or regulation."  ECF No. 4 at 7 (citing 6 C.F.R. § 5.48(b)).  The Court addresses that argument in the next Section.

ICE's *Touhy* regulations identify eight factors that Department officials and attorneys consider when deciding how to respond to a subpoena:

(1) Whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case or matter in which the demand arose;
(2) Whether the compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information;
(3) The public interest;
(4) The need to conserve the time of Department employees for the conduct of official business;
(5) The need to avoid spending the time and money of the United States for private purposes;
(6) The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated;
(7) Whether compliance would have an adverse effect on performance by the Department of its mission and duties; and
(8) The need to avoid involving the Department in controversial issues not related to its mission.

6 C.F.R. § 5.48(a).  Additionally, ICE's *Touhy* regulations note that "compliance will not ordinarily be authorized . . . [when] compliance would violate a statute or a rule of procedure."  6 C.F.R. § 5.48(b)(1).

Baca applies individual *Touhy* factors to her case to demonstrate that they have, on balance, been satisfied.  *See* ECF No. 1 at 9–11.  But in cases involving agencies' decisions not to comply with subpoenas under their respective *Touhy* regulations, courts typically do not undertake a factor-by-factor analysis.  *See, e.g.*, *In re Dep't of Veterans Affairs*, 257 F.R.D. at 15–16 (rejecting the Department of Veterans Affairs' argument that the agency's *Touhy* regulations provide the

9

appropriate standard for determining whether it must comply with the subpoena without considering each factor individually, and instead applying Rule 45 to find the subpoena unduly burdensome). *Touhy* regulations do not create a new framework for responding to and complying with subpoenas, and "neither the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court." *Houston Business Journal*, 86 F.3d at 1212. Indeed, "the Supreme Court in *Touhy* assumed a federal agency could be subject to a third-party subpoena *duces tecum*, for otherwise the agency would not need to promulgate regulations for centralizing its response to such a subpoena." *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006). Instead, agency resistance to producing documents is reviewed under Rule 45. *Chen v. Ho*, 368 F. Supp. 2d 97, 99 (D.D.C. 2005). As discussed above, Baca has shown that the information she seeks is both relevant and not unduly burdensome, and none of ICE's arguments regarding its *Touhy* regulations serve to bar the discovery Baca seeks.

## V.    The Privacy Act.

ICE argues that it cannot release the relevant records without violating the Privacy Act because ICE has not received Quintana's written and notarized consent regarding the release of his private information. ECF No. 4 at 8. The Privacy Act, 5 U.S.C. § 522a(b), provides that:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be— . . . (12) pursuant to the order of a court of competent jurisdiction.

According to the D.C. Circuit, "subpoenas—grand jury or otherwise—do not qualify as 'orders of a court of competent jurisdiction' under [the Privacy Act]), *unless they are specifically approved by a court*." *Doe v. DiGenova*, 779 F.2d 74, 85 (D.C. Cir. 1985) (cleaned up) (emphasis added). "[R]ecords can be disclosed only if they come within a legitimate exception to the Privacy Act,

e.g., a written request by the head of another agency or an authentic 'order of the court.'" *Doe v. Stephens*, 851 F.2d 1457, 1467 (D.C. Cir. 1988).

By granting Baca's motion to compel and requiring ICE to produce the requested documents, this Court's order will fall squarely under the Privacy Act's exception for "order[s] of a court of competent jurisdiction." 5 U.S.C. § 522a(b)(12). In creating this exception, "Congress has expressly permitted court-ordered disclosure" of materials otherwise protected by the Privacy Act. *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987). Although "the District Court's supervisory responsibilities may in many cases be weightier than in the usual discovery context" when the Privacy Act is at issue, discovery proceeds through the normal process, with Rule 26's relevance standard providing the test for discoverability. *Laxalt*, 809 F.2d at 889. As the district court observed on remand, *Laxalt* stands for the principle that "a court may order the production of documents otherwise protected by the Privacy Act if they are relevant." *Laxalt v. McClatchy*, No. 86-0051, 1987 WL 1361998, at *2 (D.D.C. Mar. 12, 1987). Therefore, for a court to properly order discovery of Privacy Act-protected material, the party requesting the discovery need not prove anything beyond demonstrating relevance to the underlying litigation to warrant a court order. *Laxalt,* 809 F.2d at 889.

As discussed above, Baca has demonstrated how the requested discovery is relevant to her defense in the underlying action. Because the Court recommends granting Baca's motion to compel and ordering ICE to produce the requested documents, that court order will satisfy the exception in 5 U.S.C. § 522a(b)(12), allowing for disclosure of the requested material. *See Laxalt*, 809 F.2d at 888–89. For these reasons, the Court recommends granting Baca's motion and compelling ICE to produce the requested documents.

## **CONCLUSION**

For the foregoing reasons, the Court recommends **GRANTING** Baca's Motion to Compel Compliance with Subpoena. The Court further recommends that the District Court order ICE to produce the information Baca seeks subject to the condition that the parties will use it only for purposes of the underlying litigation and, if necessary, seek to file it under seal in the relevant court.

**SO ORDERED**.

Date:   July 31, 2026

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

**Local Civil Rule 72.3(b) Notice**

The Parties are advised that under the provisions of Local Rule 72.3(b), any Party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within fourteen days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this Report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

\* \* \*